UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACOB AARON LEVEILLE,

    Plaintiff,

v.                              Case No. 3:19-cv-908-J-39MCR

RYAN EDWARD UPCHURCH,
professionally known as Upchurch,

    Defendant.
_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss First Amended Complaint (Doc. 16) and Plaintiff's Response (Doc. 19). The Motion is fully briefed and ripe for review.

**A.  Background**

Plaintiff is an artist who resides in Jacksonville, Florida. (Doc. 12 at ¶ 2). He creates paintings of country musicians, which have been featured in various museums and galleries. Id. at ¶ 3. Defendant is a country music performer who resides in Cheatham County, Tennessee. Id. at ¶ 4. Plaintiff met Defendant at one of Defendant's performances in December 2016. Id. at ¶ 10. Since that time, Plaintiff has been commissioned to paint several works of art for Defendant, many of which are not the subject of this dispute. Id. at ¶¶ 10-13.

This case involves two specific paintings, one depicting Defendant and the other depicting Johnny Cash (collectively, the "Works"), for which Plaintiff is the sole author. Id. at ¶¶ 14-15. At Defendant's request, Plaintiff delivered the Works to Defendant's

agent in October 2018, but the Works were not paid for upon delivery. Id. at ¶¶ 15-16. Plaintiff sought to obtain payment from Defendant on numerous occasions, resulting in a social media dispute with Defendant in November 2018. Id. at ¶¶ 17-19.

On November 9, 2018, Defendant posted a video on social media in which Defendant made derogatory remarks about Plaintiff and shot the Works with multiple rounds from a shotgun and a rifle. Id. at ¶¶ 20-24. The video was widely disseminated on social media and broadcast to Defendant's over one-million followers. Id. at ¶ 27. Defendant also signed his name on the Works and included the words "[Expletive] this dudes Paintings" on one of the paintings. Id. at ¶ 25. At Defendant's direction, the Works were publicly auctioned by an organization called Cheatham County After Dark. Id. at ¶ 28.  On September 5, 2019, Defendant posted a second video on social media in which he displayed the shot up Works and made derogatory remarks about Plaintiff and the Works. Id. at ¶¶ 30-33.

Plaintiff initiated this action in August 2019. (Doc. 1) The subject Amended Complaint (Doc. 16) was filed on October 28, 2019, which alleges four causes of action against Defendant: (1) violation of the Visual Artist's Rights Act ("VARA"), 17 U.S.C. § 106A(a)(3)(A); (2) conversion; (3) trespass to chattels; and (4) intentional infliction of emotional distress ("IIED"). Defendant has moved to dismiss the Amended Complaint in its entirety. (Doc. 16).

### B.  Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, an action fails to state a claim for which relief may be granted, and may

be subject to dismissal, if it fails to include such a short and plain statement. See Harper v. Lawrence County, Ala., 592 F.3d 1227, 1232–33 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(2), 12(b)(6)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, the Court must take the complaint's allegations as true and construe them in the light most favorable to the plaintiff. Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008). The Court is required to accept well-pleaded facts as true at this stage, but it is not required to accept a plaintiff's legal conclusions. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012). It is insufficient for a plaintiff's complaint to put forth merely labels, conclusions, and a formulaic recitation of the elements of the cause of action. Twombly, 550 U.S. at 555.

**C. Discussion**

    a. VARA Claim

Defendant moves to dismiss Plaintiff's VARA claim for two reasons: (1) Plaintiff has failed to allege his honor or reputation has been prejudiced as a result of Defendant's conduct, and (2) the Works are not of sufficient recognized stature to

support a claim under VARA. (Doc. 16 at 3-8). Plaintiff responds by stating he has alleged prejudice to his honor and reputation that satisfies the flexible standard under VARA. (Doc. 19 at 7-8). Plaintiff also argues he does not have to establish that the Works achieved a level of recognized stature under the subsection of VARA upon which he grounds his claims. Id. at 6-7.

Congress passed VARA in 1990 to protect "both the reputations of certain visual artists and the works of art they create" by providing them "with the rights of 'attribution' and 'integrity.'" H.R. REP. 101-514, 1990 U.S.C.C.A.N. 6915, 6915. The right of integrity "allows artists to protect their works against modifications and destructions that are prejudicial to their honor or reputations." Id.; see also 17 U.S.C. § 106A(a)(3)(A). These rights are guaranteed to all artists, regardless of stature or fame. Id. at 6925 (recognizing "an author need not prove a pre-existing standing in the artistic community" to be protected by VARA, as "less well-known or appreciated artists also have honor and reputations worthy of protection."). In actions under VARA for harm to honor or reputation, the determination of harm "must of necessity be flexible." Id. (citing W.I.P.O. Guide to the Berne Convention for the Protection of Literary Works (Paris Act 1971), Article 6bis at 42).

Regarding Defendant's first contention, Plaintiff has sufficiently alleged prejudice to his honor or reputation in the Amended Complaint. VARA does not explicitly define the terms prejudicial, honor, or reputation. Massachusetts Museum of Contemporary Art Foundation, Inc. v. Buchel, 593 F.3d 38, 54 (1st Cir. 2010). However, Congress has noted that the prejudice inquiry should "examine the way in which a work has been modified and the professional reputation of the author of the work." Id. (citing H.R. REP.

101-514, 1990 U.S.C.C.A.N. 6915, 6925-26 (footnotes omitted)). Similarly, the court in Carter v. Helmsley-Spear, Inc. applied dictionary definitions of prejudice, honor, and reputation to conclude it should "consider whether [the proposed] alteration would cause injury or damage to plaintiffs' good name, public esteem, or reputation in the artistic community." 861 F. Supp. 303, 323 (S.D.N.Y. 1994), aff'd in part, vacated in part, and rev'd in part, 71 F.3d 77, 83 (2d Cir. 1995). In Buchel, the First Circuit applied these standards and found an artist's claim for prejudice to his honor or reputation survived summary judgment when a museum altered a work without the author's consent, displayed it, and received negative reactions to it. 593 F.3d at 59-61.

In this case, Plaintiff alleges Defendant altered or modified the Works by shooting, signing, and writing derogatory remarks on them. (Doc. 12 at ¶ 38). Defendant widely distributed images of the altered works on social media and had them publicly displayed at an auction. Id. at ¶¶ 39-41. Plaintiff claims this conduct has caused him irreparable harm. Id. at ¶¶ 42-43. Though the allegations of damage are conclusory, it can be reasonably inferred from the facts alleged that Plaintiff's reputation would be harmed by Defendant's alterations to the Works. Defendant's actions could reasonably lead to the Works and, by extension, Plaintiff's name and reputation in the artistic community being mocked and ridiculed. Plaintiff is entitled to the benefit of such inferences at this stage of the case. Iqbal, 556 U.S. at 678.

Defendant's second basis for dismissal under VARA is without merit. The requirement that a work be "of recognized statute" only applies to an artist's right to prevent destruction of a work under 17 U.S.C. § 106A(a)(3)(B). The protections afforded an artist under 17 U.S.C. § 106A(a)(3)(A) to prevent distortion, mutilation, or

modification of a work "applies regardless of a work's stature." Castillo v. G&M Realty L.P., 950 F.3d 155, 165 (2d Cir. 2020); Pollara v. Seymour, 344 F.3d 265, 268 (2d Cir. 2003). Since Plaintiff has brought his claim under § 106A(a)(3)(A), he has no burden to allege that the Works were of recognized stature to plead a viable claim.

      b. Conversion Claim

Defendant argues Plaintiff cannot state a cause of action for conversion because Plaintiff lacked a possessory interest in the Works after their delivery to Defendant. (Doc. 16 at 8-10). Plaintiff responds by stating he has a possessory interest in the Works due to Defendant's non-payment and Plaintiff's subsequent demands for the return of the Works. (Doc. 19 at 8-9). Neither party addresses whether the allegations of a potential contract for the sale of the Works to Defendant has any impact on the viability of Plaintiff's conversion claim.[1]

Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." Thomas v. Hertz Corp., 890 So. 2d 448, 449 (Fla. 3d DCA 2004). "A conversion may occur where a person wrongfully refuses to relinquish property to which another has the right of possession." Seymour v. Adams, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) (citing Senfeld v. Bank of Nova Scotia Trust

---

[1] The Court notes Plaintiff vaguely alleges the existence of an agreement between Plaintiff and Defendant for the sale of the Upchurch painting for a fee. (Doc. 12 at ¶ 14). Typically, a plaintiff cannot attempt "to enforce a contractual obligation… via a conversion claim." Francois v. Gulf Coast Transportation, Inc., No. 8:16-cv-1061, 2016 WL 4097108, at *5 (M.D. Fla. Aug. 2, 2016) (citing Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)). This is because "a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion." Gasparini, 972 So. 2d at 1055. Since the parties did not address this issue, the Court will not take it up at this time. Rather, the Court will defer ruling until the record on the potential agreement is more fully developed on motions for summary judgment, if the parties choose to file the same.

Co. (Cayman), Ltd., 450 So.2d 1157 (Fla. 3d DCA 1984)). Though not a required element, allegations of a plaintiff's demand for the return of an object and a defendant's refusal to comply can state a claim for conversion. Mayo v. Allen, 973 So. 2d 1257, 1258-59 (Fla. 1st DCA 2008) ("Conversion may be demonstrated by a plaintiff's demand and a defendant's refusal") (internal citation omitted).

At this early stage, and construing the Amended Complaint in his favor, Plaintiff has stated a cause of action for conversion. Plaintiff alleges he was the creator and owner of the Works. (Doc. 12 at ¶ 46). Plaintiff agreed to transfer ownership of the Works to Defendant in exchange for a fee.[2] Id. at ¶¶ 14, 16. Defendant refused to pay for the Works, arguably negating his ownership interest in them and resulting in Plaintiff being the true and rightful owner of the Works. Id. at ¶¶ 16, 49. Defendant then refused to return the Works after Plaintiff made a demand for them. Id. These allegations sufficiently allege a claim for conversion that survive dismissal as a matter of law.

    c. Trespass to Chattels Claim

Defendant contends Plaintiff's trespass to chattels claim fails as a matter of law for the same reason his conversion claim fails. (Doc. 16 at 10). Namely, Defendant argues Plaintiff has not alleged a possessory interest in the Works necessary for a cause of action for trespass to chattels. Id. For the reasons discussed above, Plaintiff

---

[2] As noted by Defendant, Plaintiff only referenced the Upchurch painting being the subject of a fee in paragraph 14 of the Amended Complaint. (Doc. 12). However, later paragraphs allege a fee was owed for the Works collectively. Id. at ¶¶ 16-18. Whether a fee was owed for both paintings or just one, and whether Plaintiff voluntarily transferred ownership and deprived himself of an ownership interest in one or both of the paintings, cannot be decided on the limited record before the Court. However, they will be issues of fact to be resolved at summary judgment or trial.

has sufficiently alleged a possessory interest in the Works to survive a motion to dismiss as to the trespass to chattels claim.

    d.   IIED Claim

Defendant moves to dismiss Plaintiff's IIED claim because the actions alleged in the Amended Complaint do not constitute the type of outrageous conduct necessary to support a cause of action for IIED. (Doc. 16 at 11-13). Plaintiff contends the conduct alleged in the Amended Complaint meets the threshold requirements to state a claim for IIED under Tennessee and Florida law. (Doc. 19 at 9-11).

The Court starts by resolving the choice of law issue raised by Plaintiff. Florida applies the significant relationships test set forth in the Restatement (Second) of Conflicts of Laws §§ 145-46. Bishop v. Florida Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980). The significant relationships test requires issues of tort, such as IIED, to be governed by the "law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Id.  The Court must consider the following contacts when applying the significant relationships test: where the injury occurred, where the conduct causing the injury occurred, where the parties are located, and where the relationship between the parties is centered. Id.

With respect to Plaintiff's IIED claim, the parties' contacts are split. Florida is where the alleged injury occurred, Plaintiff resides, and the parties' relationship is centered. Meanwhile, Tennessee is where the harmful conduct occurred and Defendant's primary residence. However, it should be noted that, despite Defendant's conduct taking place in Tennessee, Defendant directed his conduct toward Plaintiff in Florida and published videos online that would necessarily reach beyond Tennessee.

Therefore, the balance of the contacts between the parties favors the Court applying Florida law to determine Plaintiff's IIED claim.[3]

"To state an IIED claim under Florida law, a plaintiff must allege: 1) deliberate or reckless infliction of mental suffering; 2) outrageous conduct that 3) caused the emotional distress, and 4) that the distress was severe." Chestnut Assoc., Inc. v. Assurance Co. of America, 17 F. Supp. 3d 1203 (M.D. Fla. 2014) (citing Liberty Mutual Ins. Co. v. Steadman, 968 So.2d 592, 594 (Fla. 2d DCA 2007)). "The standard for 'outrageous conduct' is particularly high in Florida." Patterson v. Downtown Med. & Diagnostic Ctr., Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994). Conduct is violative only where it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Clemente v. Horne, 707 So. 2d 865, 867 (Fla. 3d D.C.A. 1998) (quoting Restatement (Second) of Torts § 46 cmt. d). In Florida, liability does not extend to "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. 4th D.C.A. 1987). Whether conduct is sufficiently "outrageous" to state a claim for IIED is a question of law for the Court to decide. Ponton v. Scarfone, 468 So.2d 1009, 1011 (Fla. 4th Dist.Ct.App.1985).

---

[3] The Court notes that it would reach the same conclusion had it applied Tennessee law to Plaintiff's IIED claim. Tennessee and Florida have adopted virtually identical definitions of IIED. Compare Steadman, 968 So. 2d at 594, with Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). Like Florida, Tennessee narrowly construes "outrageous conduct." Doe v. Belmont University, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018) ("To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement."). Thus, the analysis by the Court applies equally to Florida and Tennessee law.

In this case, Plaintiff cannot meet the "particularly high" bar to establish a claim for IIED based on the allegations in the Amended Complaint. Patterson, 866 F. Supp. at 1383. Defendant's alleged conduct amounts to the aggressive destruction of the Works and a series of insults and indignities meant to demean and offend Plaintiff. (Doc. 12 at ¶¶ 58-61). While Defendant's alleged acts are inconsistent with acceptable or decent behavior, they are far from the atrocious and outrageous acts required to maintain a viable cause of action for IIED.

Accordingly, after due consideration, it is

**ORDERED:**

1. The Defendant's Motion to Dismiss (Doc. 16) is **GRANTED in part** and **DENIED in part**.

2. Defendant's Motion to Dismiss as to Counts I, II and III is **DENIED**.

3. Defendant's Motion to Dismiss as to Count IV is **GRANTED**. Count IV is **DISMISSED with prejudice**.

4. Defendant is **DIRECTED** to file a response to the remaining claims in the Amended Complaint within fourteen days from the filing of this Order.

**DONE** and **ORDERED** in Jacksonville, Florida this _3rd_ day of August, 2020.

_____
BRIAN J. DAVIS
United States District Judge

6
Copies furnished to:

Counsel of Record